**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 20-61-DLB**

**JAMES A. FOSTER**                                                                                 **PLAINTIFF**

**v.**                             **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL, Commissioner
of the Social Security Administration**                                           **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions and briefing (Docs. # 13, 14, 16, and 17), and for the reasons set forth herein, **affirms** the Commissioner's decision.

**I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

      On July 27, 2016, Plaintiff James Foster filed an application for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI, alleging disability beginning in June 2012.  (Tr. 98-99, 233-234, 267-279).  Plaintiff was 43 years old at the onset of his disability and he alleged in his application that he was unable to work due to diabetes, problems with his hands, nerve damage and knots in his hands, knots in his right foot, back problems, thyroid problems, knee problems, weak ankles, problems with his left shoulder, and vision problems.  (Tr. 233, 268).  His application was denied initially on November 29, 2016, (Tr. 98-99), and was again denied upon reconsideration on March 3, 2017, (Tr. 111-121).  At Plaintiff's request, an administrative

hearing was conducted, (Tr. 18-55), and on January 25, 2019, Administrative Law Judge ("ALJ") Karen R. Jackson found that Foster was not disabled under the Social Security Act and, therefore, was not entitled to benefits. (Tr. 127-135). Plaintiff appealed the ALJ's decision to the Appeals Council, which issued an opinion adopting the ALJ's conclusion that Plaintiff is not disabled, while correcting an error in the ALJ's reasoning. (Tr. 4-10).

Plaintiff filed the instant action on February 18, 2020 seeking judicial review of the Commissioner's decision. (Doc. # 1). The matter has culminated in cross-Motions for Summary Judgment, which are now ripe for adjudication. (Docs. # 13 and 16).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388,

389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B. The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2013—the day following denial of a prior application. (Tr. 129). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: carpal tunnel syndrome/Dupuytren's contracture/cubital tunnel syndrome

(bilateral upper extremities), status-post left carpal tunnel release, degenerative joint disease/chondromalacia (right knee), diabetes mellitus, and obesity. (Tr. 130). The ALJ found that Plaintiff's other impairments were not severe, including bilateral heel spurs, chronic cholecystitis, hyperthyroidism, retinopathy and remote traumatic vision loss (left eye), gastroesophageal reflux disease, hyperlipidemia, hypertension, restless leg syndrome, and obstructive sleep apnea. (*Id.*). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

The ALJ then found, at Step Four, that Plaintiff possesses the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> The claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand, walk or sit six hours out of an eight-hour workday. The claimant can frequently handle, finger and feel with the bilateral upper extremities. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation, as well as hazards such as unprotected heights or dangerous machinery. There can be no requirement for commercial driving. The claimant can occasionally kneel, crouch and crawl, and requires a cane for ambulation and balance.

(Tr. 130-131). Based on this finding, the ALJ determined that Plaintiff was unable to perform his past relevant work as a lead/head janitor. (Tr. 133-134). However, the ALJ went on to conclude at Step Five that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cashier/retail sales and office helper/information clerk. (Tr. 134-135). This finding was based on the testimony of a vocational expert who reduced the number of jobs available on account of Plaintiff's

4

required use of a cane, part of his RFC. (Tr. 135).  Accordingly, the ALJ found that Plaintiff does not qualify as disabled under the Social Security Act from September 4, 2013 through the date of the decision.  (Tr. 135).

The Appeals Council reviewed the ALJ's decision and issued an opinion adopting the ALJ's findings with respect to Steps One, Two, Three, Four, and Five.  (Tr. 4). However, the Appeals Council found "an error in [the ALJ's] evaluation of the opinion evidence of record," and issued a written opinion to correct that error.  (*Id.*).  The Council noted that on June 7, 2018, Tammy Gross, A.P.R.N., completed an "assistive device medical source statement" indicating that Plaintiff requires the use of a cane and that he can lift less than five pounds while using the cane.  (Tr. 5).  While the ALJ considered Gross's opinion concerning Plaintiff's required use of a cane, the Council found that the ALJ erred by failing to consider Gross' opinion that Plaintiff can lift less than five pounds while using the cane.  (*Id.*).  Considering the medical evidence, the Council went on to find that "given the lack of observed cane use in the record and the few relevant physical examination findings that could reasonably relate to such a need, there is no support for Ms. Gross' opinion that the claimant can only lift less than five pounds while using a cane." (Tr. 6).  Thus, although the Council found that the ALJ erred in failing consider Gross' opinion that Plaintiff can lift less than five pounds while using a cane, it concluded that this further limitation was not supported by the record.  (*Id.*).  Consequently, the Appeals Council affirmed the ALJ's finding that Plaintiff is not disabled.  (Tr. 6, 8-10).

5

**C.     Analysis**

### *1.     Required cane use*

Plaintiff first argues in his Motion for Summary Judgment that the Appeals Council erred in finding that Plaintiff could perform "light work," including frequent handling, fingering, and feeling with the bilateral upper extremities as part of his RFC despite Plaintiff's required use of a cane for ambulation and balance, Dupuytren's contractures, and bilateral carpal tunnel syndrome.  (Doc. # 14 at 3-6).  Plaintiff similarly argues that the Appeals Council incorrectly concluded that Plaintiff is able to perform the jobs of cashier/retail sales clerk and office helper/information clerk in light of his required cane use.  (*Id.* at 2-3).

A consultative examination report in October 2016 indicated that Plaintiff's shoulders, elbows, and wrists were non-tender with no redness, warmth, swelling or nodules.  (Tr. 433).  The report similarly noted no swelling, atrophy, redness, warmth, or tenderness in Mr. Foster's hands, and stated that both hands could be fully extended and made into a fist.  (*Id.*).  The consultative report further noted that Plaintiff was able to write, pick up coins, and tie his shoes, although he did have a "slight limitation" of full extension of fingers three, four, and five.  (Tr. 433-434).

In July 2016, Plaintiff saw Dr. Michael Heilig of Kentucky Orthopedic Associates complaining of bilateral hand pain and stiffness, as well as numbness in his left hand.  (Tr. 448).  Dr. Heilig observed nodules in both hands, especially with respect to his small and ring fingers, generalized stiffness with difficulty fully extending the small and ring fingers, and intact sensation.  (*Id.*).  At that time, Plaintiff was diagnosed with bilateral hand Dupuytren's contracture and left carpal tunnel syndrome.  (Tr. 448-449).  With symptoms

6

persisting and following further testing, in November 2016, Plaintiff was also diagnosed with moderate bilateral carpal tunnel syndrome and mild bilateral cubital tunnel syndrome. (Tr. 439, 444). At that time, Dr. Heilig noted decreased sensation in both upper extremities and weakness with 4+/5 grip strength bilaterally. (Tr. 444). In January 2017, Plaintiff underwent left carpal tunnel release surgery. (Tr. 476-479). A post-op report indicated some persistent decreased sensation in median nerve distribution with Plaintiff describing fifty percent improvement. (Tr. 438). Plaintiff's medical records also indicate that he had a right carpal tunnel release procedure in April 2017. (Tr. 519). In addition, Plaintiff had cubital tunnel release surgery for his right elbow in May 2018. (Tr. 132, 665).

At a September 2018 appointment with Dr. Greg Grau of Kentucky Orthopedic Associates, Dr. Grau noted that Plaintiff's right elbow had full range of motion but that Plaintiff exhibited decreased sensation in the small and ring finger of his right hand. (Tr. 665). Dr. Grau also reported "notable palmar fibrosis throughout the bilateral palms with contracture of the fingers" with Plaintiff unable to fully extend his index, long, and ring fingers on either hand. (*Id.*). At the same time, Dr. Grau noted no rigidity in Plaintiff's hands. (*Id.*). Furthermore, as the ALJ noted in part of her decision that was adopted by the Appeals Council, Plaintiff reported in a February 2017 Pain Questionnaire that he is able to prepare meals, do his own personal care, help with chores around the house, drive places alone, and go shopping for food and household items. (Tr. 307-309).

Upon a review of the record as a whole, it is apparent that the ALJ's decision—adopted by the Appeals Council—with respect to Plaintiff's ability to frequently handle, finger, and feel bilaterally is supported by substantial evidence. Both the ALJ and Appeals Council acknowledged Plaintiff's diagnoses of moderate bilateral carpal tunnel syndrome

and mild bilateral cubital tunnel syndrome, in addition to his diagnosis of "left greater than right" Dupuytren's contractures. (Tr. 8, 132). Yet, as noted above, Plaintiff had carpal tunnel release procedures on both hands, with a post-op report of his left carpal tunnel release surgery indicating fifty percent improvement. (Tr. 438, 476-478, 519). At no point, before or after these surgeries was Plaintiff's grip strength assessed at less than 4/5 bilaterally. (Tr. 444, 665). In September 2018, Plaintiff exhibited no rigidity in his hands, but was experiencing continued decreased sensation bilaterally with difficulty extending his index, long, and ring fingers.[1] (Tr. 665). Despite some evidence in the record favoring Plaintiff's position that he is entitled to a greater limitation, the Court declines to re-weigh the evidence presented to the Commissioner and finds the substantial evidence standard has been satisfied. *Her*, 203 F.3d at 389-90; *Cutlip*, 25 F.3d at 286.

Plaintiff further argues that his required cane use precludes him from frequent handling, fingering, and feeling, and from performing light work. (Doc. # 14 at 5). To reiterate, the Appeals Board affirmed the ALJ's finding that Plaintiff can perform light work, including frequent handling, fingering, and feeling bilaterally. (Tr. 4, 6, 131). Plaintiff's RFC also expressly includes a requirement that he use a cane for ambulation and balance. (Tr. 131). Plaintiff specifically argues that given his required cane use, it would be physically impossible for him to walk and use both hands at the same time. (Doc. # 14 at 4-5). However, underlying Plaintiff's argument is an erroneous assumption that a given claimant must be able to perform each aspect of the RFC *at the same time.* Plaintiff

---

[1] Plaintiff asserts that the Appeals Council neglected to consider the September 2018 medical records or Plaintiff's right carpal tunnel surgery. (Doc. # 14 at 4). However, the Commissioner need not comment on each piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). In addition, the Appeals Council adopted the ALJ's findings with respect to Plaintiff's RFC, and the ALJ expressly considered the September 2018 records. (Tr. 4, 132).

cites no authority in support of this proposition, nor does the Court find any. The RFC states that Plaintiff is capable of *frequent* handling, fingering, and feeling bilaterally. (Tr. 131). As Plaintiff points out, "frequent" is defined by an Agency Policy Statement as "occurring from one-third to two-thirds of the time." Policy Statement, SSR 83-10, 1983 WL 31251, at *5-6. Thus, the RFC is not, on its face, internally inconsistent.

Plaintiff similarly argues that his cane use categorically precludes him from performing "light work." (Doc. # 14 at 5-6). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). In addition, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Further, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with "sitting [ ] occur[ing] intermittently during the remaining time." Policy Statement, SSR 83-10, 1983 WL 31251, at *6. At the same time, "[m]any unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." *Id.* These sorts of light work jobs "require use of arms and hands to grasp and to hold and turn objects ...." *Id.*

The Court agrees that it would be difficult or impossible for Plaintiff to ambulate or stand with a cane while using both of his hands at the same time. But, again, this assumes that Plaintiff would be required to do both at the same time. While use of a cane or other assistive device may limit the number of light jobs a claimant is able to perform, "[t]here is no *per se* rule that use of a cane to ambulate precludes performance of all light jobs." *Pack v. Comm'r Soc. Sec.*, No. 0:20-cv-24, 2020 WL 7647180, at *7 (E.D. Ky. Dec.

9

23, 2020) (quoting *Scott v. Comm'r of Soc. Sec.*, 2018 WL 6175375, at *6 (E.D. Mich. Nov. 5, 2018)); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4) (noting that "the requirement to use a hand-held assistive device may also impact [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling"). Another Agency Policy Statement further provides that when a claimant requires the use of a handheld assistive device, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." Policy Statement, SSR 96-9p, 1996 WL 374185, at *7.

Here, the ALJ relied on the testimony of a vocational expert to find that Plaintiff could perform the light jobs of cashier/retail sales and office helper/information clerk. (Tr. 134-135). The ALJ specifically asked the vocational expert to take into account required use of a cane for both ambulation and balance when assessing available jobs for a claimant with Plaintiff's RFC. (Tr. 51). With the addition of the cane-use limitation, the expert reduced the number of cashier/retail sales and office helper/information clerk by two-thirds. (Tr. 51-52). Thus, the ALJ properly considered Plaintiff's required cane use in assessing his ability to perform the two, identified light jobs.

### 2. *Disability status after fiftieth birthday*

Plaintiff next argues that, at a minimum, he is entitled to an award of benefits as of his fiftieth birthday on January 27, 2019. (Doc. # 14 at 7-8). However, Plaintiff's argument relies on a finding that he is restricted to sedentary, as opposed to light work on account of his required use of a cane. (*Id.*). Because the Court has already found that the

Commissioner did not err in finding that Plaintiff is capable of light work with the modifications specified in his RFC, this argument fails.

### 3. *Disability status for continuous twelve-month period*

Finally, Plaintiff argues that the Appeals Council erred in failing to consider whether Mr. Foster was disabled for any continuous twelve-month period during the relevant timeframe. (Doc. # 14 at 8). Plaintiff specifically argues that he was disabled from at least January 2017 through May 2018 due to his multiple hand surgeries and right-elbow surgery during that period of time. (*Id.*). As Plaintiff points out, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.S. § 423(d)(1)(A). The Appeals Council considered this argument and found that the evidence in the record, including Plaintiff's surgeries, did not support a finding that Plaintiff was disabled for any given twelve-month period, thereby affirming the ALJ's decision. (Tr. 7-8).

Nothing in either the opinion of the ALJ or Appeals Council indicates that they did not consider whether Plaintiff was disabled for a continuous twelve-month period of time, if not for the entirety of the relevant period. As discussed above, Plaintiff had a left carpal tunnel release procedure in January of 2017, followed by a right carpal tunnel release in April 2017 and right-elbow cubital tunnel release over one year later in May 2018. (Tr. 438, 467-479, 519). A post-op report from Plaintiff's first carpel tunnel procedure indicated a fifty-percent improvement. (Tr. 438). Having reviewed the record as a whole and acknowledging Plaintiff's multiple procedures, persistent decreased sensation in his hands, and difficulty extending certain fingers, (Tr. 665), the Court finds the ALJ's

11

determination—affirmed by the Appeals Council—that Plaintiff was not disabled for a continuous twelve-month period is supported by substantial evidence for the reasons discussed above.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 16) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 2nd day of February, 2021.



Signed By:
David L. Bunning
United States District Judge

J:\DATA\SocialSecurity\Orders\Lexington\20-61 Foster MOO.docx